LITCHFIELD (NUNAN v.). See Case No. 10,378.

## Case No. 8,388.

### LITCHFIELD v. REGISTER et al.

#### [1 Woolw. 299.] [1]

Circuit Court, D. Iowa. Oct Term, 1868.[2]

PRE-EMPTION — PARTIES IN EQUITY — LAND OFFICERS—AS SOLE DEFENDANTS —IMPOSSIBILITY OF BRINGING THEM IN—INJUNCTION RETAINED—EXECUTIVE OFFICERS — JUDGMENT OF LAND OFFICERS—TITLE IN THIRD PARTY—CONVENIENCE.

1. Settlers upon the public lands, under the pre-emption and homestead laws, have an inchoate right, which they should be permitted to perfect into a legal title.

2. The register and receiver of the land office have no personal interest in the public lands, or in lands claimed to be such.

3. An injunction bill against such officers as the sole defendants, to restrain them from permitting settlers on lands treated by the land department as public lands, entering them under the pre-emption laws, when such settlers are not before the court. is fatally defective for want of parties.

4. Parties whose interests in the subject matter of the suit. and in the relief sought, are so bound up with those of the other parties that their legal presence in the proceeding is absolutely necessary, must be brought before the court, or it will refuse to entertain the suit.

[Cited in Alexander v. Horner, Case No. 169.]

5. It is no answer to such an objection that it is impossible to bring such parties before the court.

6. Nor will the court retain an injunction once allowed to enable the plaintiff to bring them in, when it is apparent that he cannot do so.

7. The register and receiver are mere agents of the interior department, to carry out its orders.

8. The court will not interfere by injunction with executive officers in the exercise of political or discretionary power.

9. In acting upon a claim to pre-empt a tract of land, the land officers exercise a judicial discretion.

10. And it seems that this is true even when a third party has a good title to the land to which the claim is made.

---

[1] [Reported by James M. Woolworth, Esq., and here reprinted by permission.]

[2] [Affirmed in 9 Wall. (76 U. S.) 575.]

11. In the cases in which the action of these officers has been examined and revised by the courts. jurisdiction has not been assumed until after the land department has ceased to act upon the matter.

12. This case is not within the principle of cases of injunction restraining road and other commissioners, and other bodies, from taking property not in pursuance of the authority of the law.

13. The argument from convenience applied.

This was a bill in equity for an injunction. Of the many facts alleged in the pleadings, but few need here be stated in order to an understanding of the questions determined by the court.

On the 8th of August, 1846, congress granted to Iowa, to aid it in improving the navigation of the Des Moines river, from its mouth to Raccoon fork, alternate sections of the public lands, in a strip five miles wide on each side of the river (9 Stat. 77). The Des Moines rises north of the north boundary of the state, and flows across its whole width south-easterly, and empties into the Mississippi at its extreme south-east corner. The Raccoon fork branches off from it at a point near the middle of the state. Shortly after the passage of this act, the state accepted the grant, and its officers selected the sections designated by odd numbers, lying along the whole course of the river through the state. But soon afterwards the commissioner of the general land office raised the question whether the grant extended above the Raccoon fork. Many conflicting decisions of this question were from time to time made by different officers of the land department. They are stated in Dubuque & P. R. Co. v. Litchfield, 23 How. [64 U. S.] 66, and in Wolcott v. Des Moines Nav. & R. Co., 5 Wall. [72 U. S.] 681. In 1854, the Des Moines Navigation and Railroad Company entered into an engagement with the state to carry forward the work of the projected improvement, and in consideration thereof, received from the state the lands which its officers had selected—as well those above, as those below the Raccoon fork. This company conveyed a very large portion of these lands to this plaintiff. On the 12th day of July, 1862 [12 Stat. 543]. congress passed another act extending the grant over the disputed region above the fork, which validated the selection previously made by the state, and questioned in the land department. The title thus acquired by, or confirmed to, the state, inured to the benefit of its mediate grantee, the plaintiff, who seems thereby to have taken a good title. The lands here in question are a large number of sections, and parts of sections, distributed along a line of great extent, and lie above the fork, within the Fort Dodge land district, of which the defendant Richards was register, and the defendant Pomeroy was receiver of public moneys. These officers, acting under direction of their superiors in the land department at Washington, continued to treat these lands as government property, and, as such, subject

to be sold and otherwise disposed of under the different laws regulating such matters. And, accordingly, many persons had settled upon, and many were settling upon, many different tracts of these lands, under the pre-emption and homestead laws, filing in the land office the papers required by these laws to make known their claims, making proof before the officers of the facts entitling them to purchase, and receiving, upon effecting such purchases, the usual patent certificates as evidences of their title. At the same time, still other parties were, in the ordinary course of the business of private entries, purchasing other tracts of these lands from these officers as agents of the government. Portions of these lands were timber lands, and the persons thus acquiring a claim of title thereto, and getting into possession thereof, were cutting it down and otherwise committing waste. At the same time, they were so numerous, that litigations with each would be very expensive and vexatious to the plaintiff. The object of the bill was to enjoin these officers from receiving any papers from parties claiming any of these lands under the pre-emption and homestead laws, any proofs of the rights under those laws of other parties to purchase tracts claimed by them, and any money from parties asking to make such purchases, and from executing to any such parties any evidences of title, and also from adjudicating upon any claims of these parties to make entries or purchases of these lands as public lands. The defendants answered, that they, by their character, and by their relations to the subject matter in question, and to the parties really interested, could not be thus proceeded against. A temporary injunction was allowed at the May term of the court by Mr. District Judge Love.

Another bill was filed by the same plaintiff against Goodwin, register, and Clark, receiver of public moneys at the land office, at Des Moines, containing the same general averments as to lands within their land district. In this bill the plaintiff's title is alleged to be by a mortgage to him as trustee made by the Des Moines Navigation and Railroad Company. On this bill, Mr. Justice Miller, in vacation, allowed a temporary injunction ex parte, the defendants not appearing at the time appointed for the hearing of the application to resist it, but with leave to move to dissolve. The defendants now move to dissolve these injunctions, and to dismiss the bill against the officers at Fort Dodge for want of equity.

Mr. Witherow and Mr. Parsons, in support of the motions.

Mr. Rankin, Mr. Finch, Mr. Ellwood, and Mr. Nourse, contra.

MILLER, Circuit Justice. When the application was made to me in the vacation for a temporary injunction, I had strong doubts, on reading the bill, whether it presented a case for judicial action. I accordingly appointed a day for hearing the application, sufficiently distant to enable counsel to prepare for the discussion, and expressed my desire that the question involved should be fully argued. But it seems that when the day for hearing had arrived, the defendants had received no authority to employ counsel, and therefore they were not represented.

As the mischiefs which the complainant sought to prevent by the injunction were great and imminent, and as a similar order had a few weeks before been granted in open court, I concluded to allow the temporary writ without hearing an argument from the plaintiff, which could only be ex parte. But I appended to the order a statement that it was made subject to the right, at any time, to move before me for its dissolution. I also expressed my readiness to hear such motion at any time, and my doubts as to the plaintiff's right to the injunction.

Being aware of the large amount of property involved in the question, of the number of persons interested in it, and of the public excitement on the subject, I have since given it some thought, and that reflection, and the arguments made here, have tended to strengthen my first impression. I am now quite satisfied that the bill cannot be sustained, for want of any equitable jurisdiction to grant the relief sought.

The grounds of objection to the bill are two: 1. The want of proper parties defendant, to wit, the individuals who it is alleged are asserting their right to enter these lands by pre-emption or otherwise. 2. The parties who are before the court are acting as officers of one of the executive departments of the government, in the discharge of functions which are not ministerial, but which involve the exercise of judgment and discretion.

1. This bill clearly shows upon its face that its purpose is to prevent the assertion of claims to these lands by persons who are not before the court, and whose interests are not represented by those who are. These are persons, some of whom have settled upon the land, and now claim that in virtue of their residence thereon, they have, under the pre-emption and homestead laws of congress, acquired a right in the tracts settled upon by them, and that when they shall have done such things as those laws require, they may perfect this right and receive the legal title; while others seek to enter tracts of the land at private sale, making payment therefor either in land warrants or in money. In regard to the first of these classes of persons, if their claim be just, they already have an inchoate right growing out of their residence and improvements, and this right is entitled to the protection of the courts, while the action here sought would effectually prevent their taking such steps as these laws require in order that this inchoate right may become perfected in a legal title which could be asserted in a court of justice. This is by

far the most numerous class of persons sought to be affected by the injunction here asked for; it is against them that it is in effect directed.

The land officers are but nominal defendants in the bill. They have no pecuniary interest, and they assert on their personal behalf no title or claim to the lands which are the subject of controversy. It is matter of entire indifference to them whether these lands belong now to plaintiff or to the government; whether they shall finally vest in the plaintiff, or in the parties claiming pre-emption rights.

It is, therefore, too clear for argument that the bill seeks, by the operation of the injunction upon parties having no interest in the subject matter of the suit, to destroy or effectually prevent the assertion of the rights of other parties who are not now before the court.

This question of parties has repeatedly received the consideration of the supreme court of the United States. It has uniformly been held that in such cases the court will not proceed. In Barney v. Baltimore City, 6 Wall. [73 U. S.] 280, all the authorities are reviewed, and the relation of parties to suits in chancery are arranged into three classes. One of these classes is thus described: "And there is a third class whose interests in the subject matter of the suit, and in the relief sought, are so bound up with that of the other parties, that their legal presence as parties to the proceeding is an absolute necessity, without which the court cannot possibly proceed. In such cases the court refuses to entertain the suit when these parties cannot be subjected to its jurisdiction."

Cameron v. McRoberts, 3 Wheat. [16 U. S.] 591; Mallow v. Hinde, 12 Wheat. [25 U. S.] 194; Shields v. Barrow, 17 How. [58 U. S.] 130; Northern I. R. Co. v. Michigan Cent. R. Co., 15 How. [56 U. S.] 233; Barney v. Baltimore City, 6 Wall. [73 U. S.] 280.

And in Shields v. Barrow [supra] this class is described as "persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience." The applicability of these principles to the case before us is too obvious to require comment.

In answer to this it is urged, as a sufficient reason for the court proceeding without having these parties before it, that in the nature of things it is impossible for the plaintiff to know who will assert a claim to these lands, until they present themselves before the land officers for the purpose, and as they will at once receive from the officers the patent certificates, it will then be too late to enjoin them. The fact alleged of the impossibility of discovering who these claimants are, or will be, may be admitted, but the inference

that therefore the court can, in their absence, proceed to foreclose their rights, is not sound.

It is also urged, that the injunction should be permitted to remain until the plaintiff can learn who these claimants are, and make them defendants. This would be a mere trifling with justice. There is no reason to suppose that the plaintiff can ever learn all of those who intend to claim the right of locating these lands. In fact, the bill alleges the fact that such parties are too numerous to sue at law as one ground for appealing to the equitable jurisdiction of the court. In respect of parties, the bill is fatally defective, with no capability of amendment; and no offer to amend is made.

2. The extent to which the courts will interfere with officers in the executive departments of the government, in the exercise of their ordinary duties, presents a question which has never been fully and clearly answered, although it has more than once received the consideration of the supreme court of the United States.

That the register and receiver of the land office are to be considered, in reference to the matter before us, as the mere agents of the department of the interior, is, I think, very clear. In offering these lands for sale and pre-emption, they are acting under positive instructions received from that department. Should they venture to exercise a judgment of their own, in opposition to those instructions, they would probably be removed or suspended from office, and the purpose of the department be carried out by other persons appointed in their places.

The cases in the supreme court, in which the question here presented has been most fully considered, are those of Marbury v. Madison, 1 Cranch [5 U. S.] 137; Kendall v. U. S., 12 Pet. [37 U. S.] 608; and State of Mississippi v. Johnson, 4 Wall. [71 U. S.] 475. It is true that the earlier cases are applications for mandamus, but in the last case, which was an application for injunction, the chief justice very truly remarks "that this court is unable to perceive that this circumstance takes the case out of the general principles which forbid judicial interference with the exercise of executive discretion." In the two former cases, the court decided that the head of an executive department could be compelled by a writ of mandamus to perform duties which were merely ministerial, and which involved the exercise of no political or discretionary power. In the latter case, it was held that the court would not issue an injunction to such officers, in any case when those officers were exercising political or discretionary power, and, by implication it is held, that only in the case of merely ministerial duties will they be interfered with by injunction or mandamus. What are ministerial duties in this connection is thus defined by the court in that case: "A ministerial duty, the performance of which may, in proper cases, be required of the head of a depart-

ment by judicial process, is one in respect to which nothing is left to discretion. It is a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law." And he gives the duties required in the case of Marbury v. Madison and Kendall v. U. S. [supra], as illustrations; in the first of which, the duty was the mere manual delivery of a commission as justice of the peace to the relator, and in the other, the allowance of a credit of a definite sum on the account of the relator with the treasury department of the United States.

The duties of the register and receiver, in acting upon claims to pre-emption of lands, are not of this character. They have first to determine whether the land which is the subject of the claim belongs to the government, and is not already taken up under some superior claim, and then whether the party claiming has made the requisite improvement, and has shown the required residence on the land. All these questions are to be investigated in a manner which requires the exercise of judicial judgment and discretion, and are the very reverse of ministerial, as defined by the court in the case just cited.

In answer to this view of the subject, it is strongly urged that, in the case before us, the bill shows that the lands in question are not within the control of the land officer, because the government has parted with its title; that they are no longer subjects on which the department has any right to act at all; and that, for that reason, the officers are totally without authority for these proceedings. I must confess that this argument seems to be entitled to some consideration, and I do not feel sure that it is not a sound one. But on the best consideration that I am now able to give it, I do not think it is.

The lands in question are undoubtedly within the territorial limits over which the jurisdiction of those officers extends. In every case where an application is made for pre-emption, the question must necessarily arise, and be decided by those officers, Is the land claimed by the applicant subject to entry? Has it been already appropriated, by prior valid entry, or in any other mode? And though it is claimed that in the present case the appropriation has been made by act of congress, and this bill shows a prima facie title in plaintiff to these lands, I do not see but it is still the duty of the land office to decide that question with the best light it may have, whenever it is raised by a person applying to enter them as unappropriated public lands. If this be so, then, according to the principle supposed to be established by the cases cited, the courts should not interfere with the exercise of that judgment in the matter while it is under their consideration.

Reference has been made in the argument to the cases in which the supreme court has examined into the manner in which these officers have acted, and have decreed that the person to whom they had issued the patent should convey to the person to whom they have refused it.

These cases are numerous, and depend on the principle that by some means, such as fraud, mistake, or want of authority in the land office, one person has obtained a legal title which equitably belonged to another. But this jurisdiction has only been exercised after the land department had ceased to exercise any authority in the matter, and in no manner sought to restrain or direct them while in the exercise of their proper duties.

Neither are the cases in point in which injunctions have been granted to restrain road commissioners, street commissioners, railroad companies, and similar bodies, from so exercising their powers as to invade, without authority of law, the private rights of individuals.

These bodies belong to no particular department, and exercise no special executive functions. They are the creatures of law; and when they seek to transcend the limits of their authority, are as much subject to judicial control as private persons are. If we look to the consequences likely to ensue from the establishment of such a precedent as the granting of this injunction, we shall see additional reason for hesitation in doing so.

We are all familiar with the fact that interests of great value are involved in the questions which are every day in contest before the land department, and that these are often supposed to depend upon the ascertainment of the legal rights of the contestants. Now, if the courts can, while these matters are pending before the officers of that department, issue a mandamus at the instance of every person asserting a legal right which they refuse to recognize, or enjoin them at the instance of every person who believes they are invading his legal rights, in a manner which leaves him no other remedy, the result of that principle will be that in some mode or other all the contested business arising in the course of the sale of the public lands, and delivery of patents for them, will be drawn from the officers to whom the law has confided these matters into the courts of justice, and these courts will find themselves converted into superintendents of the land offices of the country.

In McIntire v. Wood, 7 Cranch [11 U. S.] 504, the supreme court decided, in a case the converse of this, that the circuit court of the United States had no authority to issue a writ of mandamus to the registers of the land office to compel them to issue certificates of pre-emption, when that officer refused to do so, under the idea that the right was already vested in another; and the decision was based upon the ground that no such authority was vested by law in the circuit courts. This case was affirmed by the

same court in McClung v. Silliman, 6 Wheat. [19 U. S.] 598, where it was also held that the state court had no such power over the register. These cases have never been overruled; and if the right to interfere by mandamus and by injunction with these executive officers depends on the same general principle as asserted in State of Mississippi v. Johnson, 4 Wall. [71 U. S.] 475, they are directly in the way of the relief here sought.

The motions to dissolve the injunctions are granted, and the motion to dismiss the bill for want of equity is also granted.

Motions to dissolve injunction, and motion to dismiss the bill against the land officers of the Fort Dodge district for want of equity, sustained.

Affirmed by supreme court, December term, 1869, 9 Wall. [76 U. S.] 575. Compare Frisbie v. Whitney (decided by United States supreme court, December term, 1869) Id. 187.

See Gaines v. Thompson, 7 Wall. [74 U. S.] 347.

[NOTE. The opinion of the supreme court was delivered by Mr. Justice Miller, who said: "The principle had been so repeatedly decided in this court, that the judiciary cannot interfere either by mandamus or injunction with executive officers such as the respondents here. in the discharge of their official duties, unless those duties are of a character purely ministerial, and involving no exercise of judgment or discretion, that it would seem to be useless to repeat it here." The determination of what lands are open to pre-emption, what are sold, what granted by act of congress, constitutes a part of the duty of respondents, and this the learned justice considers clearly the exercise of a judicial function. He considers the bill fatally defective for another reason,—want of proper parties, viz. those seeking to pre-empt the lands, who are the real parties in interest.]